Johnson J.
. , The original consideration of this note is understood to be fair and legal, and the only tion raised is, whether Bowdry and Sanders who won it from Joseph Ware, the payee, (for the plaintiff represents them) can maintain an action on it
*314 The play was in Georgia, and the note was delivered by the payee to Bowdry and Sanders there — The acts of the Legislature of that- State, found in Prince’s Dig. pages 187-8 declare all bills, bonds, judgments, mortgages, notes of hand or other securities or conveyances founded on gaming considerations, to be void, and authorizes the loser within six months after, to bring an action to recover back the money or goods lost, and if he fail to bring his action within that time, any other person may sue to recover the same; and it is contended in support of this motion, that the delivery of the note having been made on a consideration which was illegal when it was made, the plaintiffis not entitled to recover.
An objection has been made to the admissibility of this digest, as evidence of what the laws of Georgia are. That book appears to have been compiled by the authority of the Legislature, and to have received the sanction of the Governor, who was authorised by the legislature, to examine and approve it. The copy how before me, is found in the library of the Legislature of this State, sent them in all probability by the authorities of Georgia, in. pursuance of the usage of the States to interchange copies of their laws. It is too, a matter of common notoriety, that it is used as authority for the statute law in the Courts of Georgia, and without intending to discuss the subject, I am much inclined to think it ought to be received here. But it is unnecessary to decide that question, for conceding, that the consideration of the transfer was illegal, and that the case must be resolved according to the laws of Georgia, still I think the plaintiff is entitled to recover.
If the original consideration of a note be good, no illegality or want of consideration in an intermediate transfer, or indorsement, will avoid it in the hands of a bona fide holder. It was so ruled by Lord Kenyon in Daniel v. Cartony, 1 Esp. Rep. 274, when there Lad been usury in an intermediate indorsement. The case of Parr v. Eliason 1 East 91, was exactly such another case, usury in an intermediate indorsement *315 of a bill, and the same learned judge acted upon the same rule ; and remarks that serious consequences might arise, if it could be supposed that the Court entertained any doubt about it. I observe however in Day’s edition of East, the meaning of the Court is entirely perverted by the omission of a word in the following sentence of Lord Kenyon’s remarks. “But if this action could be maintained, no man would be safe in taking, even a Bank of England post bill, payable to order,” whereas the whole context shews shews clearly that it should read, “but if this action could not be maintained” Ac. The case of Foltz v. Mey, 1 Bay, 486, was also a case of usury in an intermediate indorsement, when the same rule was adopted, and has been followed ever since.
The ease of Lowes v. Mazereddo, 1 Starkie. Rep. 385, has been relied on by the counsel, with some degree of confidence. That case is rather loosely reported, and from the Reporter’s marginal digest it is I think very apparent, that he has mistaken the views of the Court; upon a careful examination, it will be found that usury entered into the original consideration of the hill as well as the intermediate indorsement, and the judgment is expressly put on the authority of Lowe v. Waller, Doug. 736; and in that case, the only ground of defence, was that the original consideration of the bill -was usurious. In Lowes v. Mazareddo, the circumstance that there was also usury in the in-dorsement, is mentioned as a mere make-weight.
All the authorities agree, that if the plaintiff obtain possession of a note or bill negotiable by delivery, by fraud, finding or theft, he cannot maintain an action on it; and the general language of the eases, is that if the manner in which he obtained possession, is called in question, he is bound to shew that he came by it fairly, and for sufficient consideration; Mims v. Whiddon, 2 Baily 451, and Ihave heretofore considered Bowdry and Sanders in that light. But it is-objected that they are not tona fide holders, as the consideration of the transfer to them was unlawful gaming.
The rule which requires the plaintiff to shew by *316 what means he became possessed of the note, was intended for the protection and benefit of the payee, to prevent the fund from being drawn out of the hands of the debtor, and given to one who is not entitled to it. The maker of the note can have no interest in this matter. In any event, he must pay the money, and it cannot be important to him to whom it is paid. It is a part of the undertaking of the maker of a note or bill transferable by delivery, to pay to whom the payee shall deliver it, and authorise to receive the contents. What right has he then to enquire, whether the payee parted from it for a legal or an illegal consideration, or no consideration at all; or if the payee so wills it, how can he prevent his applying the proceeds to the most nefarious purposes, even to bribe another to murder him; and what will it avail the maker, if he pays the money to the payee instead of him whom he has authorized and appointed to receive it? I understand therefore that nothing more is meant by the rule, than that the plaintiff is bound to shew that he has the authority of the payee to receive the contents of the note; a possession obtained by the voluntary consent of the payee, and with authority to receive the money, cannot as between them be regarded as fraudulent.
It is objected also that Joseph Ware was in a state of intoxication when Bowdry and Sanders won the note from him, and therefore the plaintiffs are not entitled to recover.
The rule laid down in Wade and Massey v. Colvert, 2 Const. Rep. by Mills, 21, is that generally a man will not be allowed to exonerate himself from a contract on account of his being in a state of intoxication, for that might be a cloak for fraud. But when the state of intoxication is such as not to leave him the power of distinctly perceiving and assenting to the contract, he will not be bound, and whatever doubts and speculations this subject may have given rise to, I am satisfied with that judgment. He who voluntarily drinks to intemperance, deserves but little com-misseration, but I can feel neither sympathy for, nor *317 forbearance towards one who will practice upon another to deprive him of the means of subsistence, when he is in a state of brutal insensibility. But the denc-e as to the existence of that state of mind, ought to be perfectly clear and satisfactory, for there are those who play the drunkard well, when they have the full command of all their faculties, and might be tempted to exercise that talent, for the purpose of obtaining an advantage. It does not appear here, under what degree of intemperance Joseph Ware was laboring at the time he delivered the note to Bowdry and Sanders; that objection cannot therefore prevail.
Motion dismissed.
O’Neall & Harper Js. concurred.